[D.E. 33]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK GATO,<br>    Plaintiff,<br><br>v.<br><br>UNITED AIR LINES, INC.,<br>ALLIED AVIATION SERVICES,<br>INC., and JOHN DOES 1-10<br>(fictitious names),<br>    Defendant. | Civil Action No.:<br><br>10-cv-1090-ES-SCM |

## ORDER

THIS MATTER comes before the Court on joint motion of defendants United Air Lines, Inc., (hereafter, "United") and Allied Aviation Services, Inc., (hereafter, "Allied"; collectively, "Defendants") for spoliation sanctions related to the deletion of plaintiff Frank Gato's (hereafter "Plaintiff") Facebook account. [D.E. 33]. Specifically, Defendants request that this Court: (1) enter an Order issuing an instruction at trial that the jury draw an adverse inference against Plaintiff for failing to preserve his Facebook account; and (2) award Defendants with expenses, including attorneys' fees, associated with discovery and the filing of the instant motion. *Id.* Plaintiff opposes Defendants' motion. [D.E. 34]. The Court has considered the parties' submissions and, for the reasons set forth herein, Defendants' motion for sanctions is hereby **GRANTED IN PART** and **DENIED IN PART.**

1

## BACKGROUND

This is a personal injury action arising out of an alleged accident that occurred on January 21, 2008, at the John F. Kennedy Airport. (*See* D.E. 1, Complaint at *1). Plaintiff was employed as a ground operations supervisor for JetBlue Airways Corporation, and the alleged accident occurred in the course of Plaintiff's employment. *Id.* at *2. Essentially, Plaintiff asserts that while he was unloading baggage an aircraft, owned and operated by United, caused a set of fueler stairs, owned and operated by Allied, to crash into him. *Id.*

Plaintiff alleges to have sustained a number of injuries as a result of the accident, including a torn rotator cuff, a torn medial meniscus, and back injuries. *Id.* Plaintiff also alleges that said injuries have rendered him permanently disabled, and that his disability limits his physical and social activities. *Id.* Furthermore, Plaintiff claims that he has been unable to work since July of 2008. (*See* Defendants' Brief in Support of Motion at *6, D.E. 33-4).

Defendants have sought discovery related to Plaintiff's damages and his social activities. *Id.* at *7. Defendant United's Third Request for Production of Documents to Plaintiff was served on July 21, 2011, and included a request for documents and information related to social media accounts maintained by Plaintiff as well as online business activities such as eBay. *Id.* On July 27, 2011, Defendant Allied joined in United's discovery requests, and on

November 21, 2011, Plaintiff provided Defendants with signed authorizations for the release of information from social networking sites and other online services like eBay and PayPal. *Id.* However, Plaintiff did not include an authorization for the release of records from Facebook. *Id.*

After Defendants again requested authorization for the release of Plaintiff's Facebook records, the parties raised their discovery issue before Magistrate Judge Cathy L. Waldor during an in-person settlement conference on December 1, 2011. *Id.* at *8. Judge Waldor ordered Plaintiff to execute an authorization for the release of documents and information from Facebook, and Plaintiff agreed to change his account password to "alliedunited." *Id*. While the parties dispute whether it was agreed that defense counsel would directly access Plaintiff's Facebook account, the parties do not dispute that the password was provided to counsel for the purpose of accessing documents and information from Facebook. *Id.;* (*see also* Plaintiff's Brief in Opposition, D.E. 34). Similarly, Plaintiff alleges that "assurances were given by Counsel for the Defendants at the December 1, 2011 conference that there would not be unauthorized access to the Facebook account online," whereas Defendants allege that there were no assurances given that the account would not be accessed. *Id.*

Plaintiff changed his password on December 5, 2011. (*See* Defendants' Brief in Support of Motion at *8, D.E. 33-4). Shortly thereafter, counsel for United allegedly accessed the account "to

3

confirm the password was changed," and printed portions of Plaintiff's Facebook page.  *Id.*  Counsel for Allied allegedly did not access or view any portion of Plaintiff's Facebook account.  *Id.* at *9.  On December 9, 2011, counsel for Plaintiff sent an email to defense counsel indicating that Plaintiff had received an alert from Facebook that his account was logged onto from an unfamiliar IP address in New Jersey, and asked if Plaintiff's Facebook account had been accessed directly by defense counsel.  *Id.*  On December 15, 2011, counsel for United confirmed that Plaintiff's Facebook account had been accessed and that Plaintiff's authorization "had been sent to Facebook with a Subpoena in order to obtain the entire contents of the account directly from Facebook."  *Id.*

While Facebook did respond to the subpoena served upon it, Facebook objected to providing certain information related to Plaintiff's account due to concerns regarding the Federal Stored Communications Act.  *Id.*  Facebook instead recommended that the account holder download the entire contents of the account as an alternative method for obtaining the information.  *Id.*  Defendants allege that this issue was discussed with the Court during a telephone status conference on January 6, 2012, where Plaintiff's counsel advised that he would be willing to download the account information and provide a copy to the parties.  *Id.*  Defendants allegedly agreed to Plaintiff's proposal, with the condition that Plaintiff would also provide a certification that the data was not modified or edited since the December 1, 2011 settlement conference.  *Id.*

However, on January 20, 2012, Defendants were advised by Plaintiff's counsel that Plaintiff's Facebook account had been deactivated on December 16, 2011, and that all of Plaintiff's account data was lost. *Id.* at *10. Plaintiff allegedly deactivated his account because he had received notice that it was accessed on December 6 and 7 by a New Jersey IP address that was unknown to him, despite counsel for United having already confirmed that it had directly accessed Plaintiff's Facebook account. *Id.* United's counsel requested that Plaintiff immediately reactivate his account, but the account could not be reactivated because Facebook had "automatically deleted" the account fourteen days after its deactivation.[1]  *Id.*  As a result, the contents of Plaintiff's Facebook account no longer exist and cannot be retrieved. *Id.*

Defendants contend that some of the contents of Plaintiff's Facebook account that were printed in black and white by counsel for United contain comments and photographs that contradict Plaintiff's claims and deposition testimony. *Id.* at *13. This information allegedly includes physical and social activities in which Plaintiff

---

1 There is some dispute between the parties regarding whether the Plaintiff did, in fact, merely deactivate the account and then neglect to reactivate it within fourteen days, thus causing the account to be "automatically deleted." As noted by Defendants, the procedures for deactivating versus permanently deleting a Facebook account are not identical. (*See* Defendants' Brief in Support of Motion at *12, D.E. 33-4). While Plaintiff argues that his account was merely deactivated, it appears from the record that Plaintiff must have taken additional steps required to permanently delete his account. *See id.* For the purposes of deciding the instant motion, the Court finds that it is irrelevant whether plaintiff requested that his account be deleted or merely deactivated, as either scenario involves the withholding or destruction of evidence.

engages, trips taken by Plaintiff, and evidence of Plaintiff's online business activities.  *Id.*  Defendants contend that the above constitutes discoverable evidence relevant to Plaintiff's claims for damages and overall credibility.  *Id.*

### **DISCUSSION**

Spoliation occurs where evidence is destroyed or significantly altered, or where a party fails to "preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Mosaid Technologies v. Samsung Electronics*, 348 F.Supp.2d 332, 335 (D.N.J. 2004) (internal citations omitted).  Litigants in federal court have a duty to preserve relevant evidence that they know, or reasonably should know, will likely be requested in reasonably foreseeable litigation, and the Court may impose sanctions on an offending party that has breached this duty.  *See Scott v. IBM, Corp.*, 196 F.R.D. 223, 248 (D.N.J. 2000).  "Potential sanctions for spoliation include: dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs."  *Mosaid*, 348 F.Supp.2d at 335.

In determining which sanction is appropriate courts consider the following:

    (1)  The degree of fault of the party who altered or destroyed the evidence;
    (2)  The degree of prejudice suffered by the opposing party; and
    (3)  Whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and where the offending party is seriously at fault, will serve to

deter such conduct by others in the future.
*Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994). Here, the Court will limit its focus to the adverse inference instruction and monetary sanctions, as they are the only sanctions that Defendants request. (*See* Defendants' Brief, D.E. 33-4).

An adverse inference, or "spoliation instruction," permits a jury to infer that the fact that a document was not produced or destroyed is "evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Scott*, 196 F.R.D. at 248. The adverse inference instruction is predicated "upon the common sense observation that when a party destroys evidence that is relevant to a claim or defense in a case, the party did so out of the well-founded fear that the contents would harm him." *Mosaid*, 349 F.Supp.2d at 336. Before giving an adverse inference instruction, the Court must find that four factors are satisfied: (1) the evidence was within the party's control; (2) there was an actual suppression or withholding of evidence; (3) the evidence was destroyed or withheld was relevant to the claims or defenses; and (4) it was reasonably foreseeable that the evidence would be discoverable. *Id.*; *Brewer v. Quaker State Oil Refining Co.*, 72 F.3d 326, 334 (3d Cir. 1995); *Veloso v. Western Bedding Supply Co.*, 281 F.Supp.2d 743, 746 (D.N.J. 2003); *Scott v. IBM Corp.*, 196 F.R.D. 223, 248 (D.N.J. 2000).

Here, the deletion of Plaintiff's Facebook account clearly satisfies the first, third, and fourth of the aforementioned factors.

Plaintiff's Facebook account was clearly within his control, as Plaintiff had authority to add, delete, or modify his account's content. *See Arteria Property Pty Ltd. v. Universal Funding V.T.O., Inc.*, 2008 WL 4513696 at *5 (D.N.J. 2008). It is also clear that Plaintiff's Facebook account was relevant to the litigation. Plaintiff alleges to have sustained serious injuries in this personal injury action, and further alleges that said injuries have limited his ability to work and engage in social and physical activities. The Facebook information sought by defendants focused upon posts, comments, status updates, and other information posted or made by the Plaintiff subsequent to the date of the alleged accident, as such information would be relevant to the issue of damages. Thus, the first and third factors are both satisfied.

With regard to the fourth factor, the Court finds that it was reasonably foreseeable that Plaintiff's Facebook account would be sought in discovery. Defendants requested Plaintiff's Facebook account information as early as July 21, 2011, nearly five months before Plaintiff deactivated his Facebook account. Furthermore, Plaintiff's Facebook account was discussed during the December 1, 2011, Settlement Conference, where Plaintiff was present and the Court order related to the discovery of information associated with Plaintiff's Facebook account. Accordingly, it is beyond dispute that Plaintiff had a duty to preserve his Facebook account at the time it was deactivated and deleted.

It follows that the only point of discussion that remains with

regard to the appropriateness of an adverse inference instruction is the second factor, whether there was "actual suppression or withholding of evidence." Plaintiff argues that he did not intentionally destroy evidence or violate a Court Order, and that his actions fall short of the "actual suppression" standard. (*See* D.E. 34, Plaintiff's Brief at \*6). Plaintiff alleges that he had recently been involved in contentious divorce proceedings, and that his Facebook account had been "hacked into" on numerous occasions prior to this lawsuit and the settlement conference held in December of 2011. *Id.* Accordingly, Plaintiff asserts that he acted reasonably in deactivating his Facebook account after receiving notice from Facebook that his account had been accessed from an unauthorized IP address that he was unfamiliar with. *Id.* Plaintiff asserts that the permanent deletion of the account was accidental, and entirely the result of Facebook "automatically" deleting the account 14 days after its deactivation in accordance with company policy. *Id.* Relatedly, Plaintiff's counsel notes that Plaintiff was never personally advised that it was actually defense counsel that accessed his account until after the account had been permanently deleted, and at this point Plaintiff allegedly attempted to reactivate the account to no avail. *Id.* at \*6-7.

    The Court is not persuaded by Plaintiff's arguments regarding whether the evidence at issue was intentionally suppressed. As noted in *Mosaid*, the spoliation inference serves a remedial function, leveling the playing field after a party has destroyed or withheld

9

relevant evidence, thereby prejudicing the opposing party.  *Mosaid*, 348 F.Supp.2d at 338.  With regard to "actual suppression," the court in *Mosaid* is clear in finding that, so long as the evidence is relevant, the "offending party's culpability is largely irrelevant," as it cannot be denied that the opposing party has been prejudiced.  *Id.*  Even if Plaintiff did not intend to permanently deprive the defendants of the information associated with his Facebook account, there is no dispute that Plaintiff intentionally deactivated the account.  In doing so, and then failing to reactivate the account within the necessary time period, Plaintiff effectively caused the account to be permanently deleted.  Neither defense counsel's allegedly inappropriate access of the Facebook account, nor Plaintiff's belated efforts to reactivate the account, negate the fact that Plaintiff failed to preserve relevant evidence.  As a result, Defendants are prejudiced because they have lost access to evidence that is potentially relevant to Plaintiff's damages and credibility.  In light of all of the above, a spoliation inference is appropriate.  *See id.*

    Finally, the Court will address Defendants' request for attorney's fees and costs.  Monetary sanctions are used to compensate a party for "the time and effort it was forced to expend in an effort to obtain discovery" to which it was entitled.  *Mosaid*, 348 F.Supp.2d at 339.  There is no rule of law mandating a particular sanction upon a finding of improper destruction or loss of evidence; rather, such a decision is left to the discretion of the court."

*Kounelis v. Sherrer*, 529 F.Supp.2d 503, 520-21 (D.N.J. 2008) (quoting *Hawa Abdi Jama v. Esmor Corr. Servs.*, 2007 U.S. Dist. LEXIS 45706, at *126 (D.N.J. 2007)). While the Court appreciates that Defendants wish to be compensated for the time and effort expended in obtaining the discovery at issue in this matter, the Court, in its discretion, does not find that an award of attorney's fees and costs is warranted. Here, Plaintiff's destruction of evidence does not appear to be motivated by fraudulent purposes or diversionary tactics, and the loss of evidence will not cause unnecessary delay. Therefore, considering the particular circumstances presented in this matter, the Court, in its discretion, finds that an adverse inference instruction without monetary sanctions is sufficient. *See Kounelis*, 529 F.Supp.2d at 522.

## CONCLUSION

For the reasons set forth above, Defendants' request that an instruction be given at trial to the jury that it may draw an adverse inference against Plaintiff for failing to preserve his Facebook account and intentional destruction of evidence is GRANTED. Defendants' request for attorney's fees and costs is DENIED. An adverse inference should be provided to the jury at an appropriate time, as determined by the Honorable Esther Salas, U.S.D.J.

s/ *Steven C. Mannion*
**STEVEN C. MANNION**
**UNITED STATES MAGISTRATE JUDGE**

Date: March 25, 2013